JULIA LUPTON, Complainant, Appellant,

*vs.*

JOHN ALMY AND WIFE, Defendants, Appellants, impleaded
with PECK and KEEP.

APPEAL IN EQUITY FROM WALWORTH CIRCUIT COURT.

A purchaser at a chancery sale on a decree of foreclosure and sale, buys subject to
the final order and decree of the court.

Where the purchaser at a foreclosure sale took possession of the premises after the
sale had been set aside, and order of confirmation vacated; *held*, that he was a
*tort feasor*, and was liable for the rents and profits during his possession, and also
for all crops and products on the premises at the time of his taking possession.

THE bill in this cause was filed February 14, 1851, to fore-
close a mortgage executed October 18, 1849, by Almy and wife
to the complainant, to secure the payment of $400 and interest,
in five years at the rate of 15 per cent. per annum, payable semi-
annually. Peck and Keep were subsequent incumbrancers by
a judgment lien of about $150, and were made parties defendant.
All of the defendants were served with process, and the bill
was taken as confessed against them all. At the June term,
1851, a decree for $90 interest due, and $25 for solicitor's fees,
with costs, was entered.

At the same term, Peck and Keep purchased of the complain-
ant her mortgage and decree, and took an assignment. Subse-
quent to the judgment lien of Peck and Keep, and previous to
the decree, A. L. Gibbs had loaned said Almy $325, and taken a
mortgage, subject to the complainant's mortgage, and Beck
and Keep's judgment.

In June, 1851, Gibbs purchased of Peck and Keep, and
took an assignment of all their claims upon the premises. On
the 19th day of July, 1851, the sheriff sold all of the mortgaged
premises, under the decree, and Gibbs became the purchaser
for $150. At the next term the sale was confirmed. At the
same term, on the petition of Almy supported by affidavits, the
sale was set aside, and the order of confirmation vacated. Gibbs

took possession of the premises and continued to hold and occupy them. No further proceedings were had until the October term, 1854. The subsequent proceedings are fully set forth in the opinion.

*Winsor & Smith*, for the appellant.

*David Noggle*, for the appellees.

*By the Court*, SMITH, J. This was a bill filed in the Walworth Circuit Court by the complainant to foreclose a mortgage, executed by the defendants, Almy and wife, to the complainant October 18, 1849, to secure the payment of $400 in five years with interest at the rate of fifteen per centum per annum, payable semi-annually. Peck and Keep were subsequent incumbrancers, by virtue of a judgment lien on the premises for about $150. The defendants were all served with process, and the bill was taken as confessed as against all of them. At the June term, 1851, a final decree was passed, for $90 interest due, and $25 for solicitor's fees. At the same term, Peck and Keep purchased the decree of the complainant, and took an assignment thereof. Previous to the decree, but subsequent to the judgment lien of Peck and Keep, one A. L. Gibbs loaned said Almy $325, and took a mortgage, as security, upon the same premises. For the purpose of protecting his mortgage, Gibbs, in 1851, purchased of Peck and Keep all of their claims, including the judgment and the decree in favor of the complainant, which were duly assigned to him. On the 19th day of July, 1851, the mortgaged premises sold under the decree, and were bid in by Gibbs for $150. Almy was present at the sale. The sale was confirmed at the October term, 1851. Subsequently, at the same term the defendant Almy moved the court upon petition and affidavits, to set aside the sale, and order a resale of the premises, and after hearing the respective parties the following order was made and entered, viz:

" In this cause a motion to set aside the sale of the sheriff of Walworth county, on the 19th day of July last, and asking the court to order a resale of the premises described in the decree entered in this cause, for the reasons and causes therein stated,

having been heard and argued by Spooner and Elderkin, solicitors for the said John Almy, and by H. S. Winsor, solicitor for the said Julia Lupton, and the court being now sufficiently advised of and concerning the premises, and on motion of Spooner and Elderkin, solicitors for such John Almy; it is ordered and decreed by the court, that the sale made in this cause on the 19th day of July last by the sheriff of Walworth county, be set aside; and that the order of the court confirming the report of the sale made and filed by the sheriff on the 7th day of October, A. D. 1851, be revoked. And it is further ordered, that the premises described in said decree be resold by the said sheriff of Walworth county. And it is further ordered by the court as a condition precedent to such resale, that the said John Almy shall pay to said A. L. Gibbs, the purchaser at the first sale, the amount of sheriff's, clerk's and solicitor's fees, as returned into this court as paid by the said A. L. Gibbs, with interest thereon, and one dollar for recording the deed on such first sale; which said payment shall be paid by said Almy on or before the 17th day of November next."

This order was made in open court, in term, was signed by the judge, and dated the 18th day of October, 1851.

No further proceedings were had in the case until the October term, 1854, when the defendant Almy again moved the court for a resale of the premises, which motion was founded upon the record and accompanying affidavits. The affidavit of Almy stated that Gibbs was, at the time of the sale, the owner of the mortgage and decree; that immediately after the sale in July, 1851, Gibbs entered into possession of the premises, and has continued in possession ever since, and has received the rents, issues and profits thereof; that at the time of the sale, there was over two hundred dollars worth of crops on the premises belonging to the said Almy, which the said Gibbs took and converted to his own use, against the will and consent of the said defendant; and that the rents, issues and profits were worth $200 per annum; that he had often applied to Gibbs to have the value of crops, rents and profits aforesaid, credited to him on the said mortgage, but he had refused, and thus had deprived him of the means of paying the mortgage and interest; that in consequence of losing his crops as aforesaid, and other circumstances beyond

his control, he was unable to raise the means to comply with the former order of the court; that in October, 1853, he tendered to the said Gibbs $800 in money, a sum amply sufficient to pay the said debt and interest, and to pay, satisfy and discharge said decree, interest and costs; but said Gibbs refused to receive the same or any portion thereof, and insisted upon holding the premises by virtue of his purchase at such sale, and also holding the said defendant liable for the balance of said indebtedness; that on the 3d day of October, 1854, he tendered to H. S. Winsor, Esq., solicitor for Gibbs, the sum of $80, more than sufficient to pay the costs, charges and interest, according to the requirements of the foregoing order, which the said Winsor refused; that the premises were worth $3,000; and that he had good reason to believe that Gibbs intended to hold the premises for the trifling sum bid by him therefor, and to hold the defendant liable for the balance. The sum of $80 was deposited with the clerk to pay the costs, &c., required by the former order.

There were also read the affidavits of two other persons, stating their knowledge of the premises, the value thereof at $20 per acre, and the number of acres to be one hundred and thirty-one.

On the hearing, Gibbs, assignee of the decree and purchaser, opposed the motion and read counter affidavits, the substance of which was, that Gibbs had made improvements upon the premises of the cash value of $200; that at the time of the sale the fair value of the premises was $800, and in 1854, including improvements, the value was $2,400 to $2,600.

The affidavit of Gibbs stated that at the time of the sale he had claims against Almy to the amount of $1,100, which were liens upon the mortgaged premises; that the value of the grain which he received on the ground at the time of the sale, did not exceed $80 or $90; that in November, after he had taken possession, he offered to let Almy have the premises for the sum of $1,200, that being, as nearly as he could calculate, the amount of his claims upon the premises which Almy promised to pay if he could get the money; but that he had never done so; denies the tender of $800, but admits that Almy offered to pay up the Lupton mortgage, and states that he is willing to release and

discharge Almy from all his indebtedness to him, provided he will be satisfied with said offer.

Upon these facts Gibbs moved the court for an order vacating an order setting aside the sale, and order of confirmation, and that the sale heretofore made be confirmed.

These are all the material facts upon which, after hearing the counsel for the respective parties, the Circuit Court made an order referring the whole matter to a commissioner to state an account of the amount due upon the decree, also of the rents, issues and profits of the crops on the premises at the time of the sale and when Gibbs went into possession, in which Almy had any interest, and the amount and value of such interest; and also of all improvements put upon the premises by Gibbs, or under his direction and at his expense; and of all the costs of sale; also of the value of the premises at the time of sale and at the time of taking the account; and that the commissioner report the same at the next term of the court, together with his opinion as to the terms upon which the premises shall be resold.

It is difficult to perceive any deviation from the plain principles of equity, or from the rules of practice, in the order of the court below from which an appeal is taken. A proper construction of the order of the 18th of October, 1851, leaves no doubt that the sale made on the 19th day of July, 1851, was, by that order, set aside. The terms of the order admit of but one construction. Not only was the sale set aside, but the order of confirmation was also vacated. This left the parties, complainant and purchaser, in precisely the same condition as though no sale had taken place. It is true that conditions were imposed upon the defendant Almy, precedent to his obtaining a resale on his application. But Gibbs obtained no title by his purchase. We have repeatedly held that the purchaser at a chancery sale bought subject to the final order or decree of the court. By the affidavit of Gibbs, it would seem that he took possession of the premises in November, 1851, after the sale at which he purchased had been set aside, and after the order of confirmation had been vacated. It is obvious, therefore, that he did so without the least color of right, and was, to all intents and purposes, a *tort feasor*; that as such, he appropriated to his own use the crops

on the ground, as such he continued to hold possession. The fact that Almy had forfeited his right to demand a resale of the premises, did not in any degree tend to give efficacy to the sale which had, by a solemn order of the court, been rendered absolutely null and void.

At common law a mortgagee in possession after forfeiture, might appropriate the rents and profits of the mortgaged premises, applying the same to the payment of the mortgage debt. If Gibbs was not content thus to hold the premises and account for the rents and profits (as equity will most assuredly compel him to do), and had wished to perfect the foreclosure by a sale and application of the proceeds thereof, he should himself have applied to the court for another sale. But how could he hope to render the first sale, which had been effectually annulled by order of the court, effectual as a title, or even as a color of title, is inconceivable. The order setting aside the sale is positive and unconditional; so also is the vacation of the order of confirmation. The only condition contained in the order is, that in case the defendant Almy shall choose to avail himself of a sale of the premises as a mode of discharging the mortgage, he should first pay the costs and charges mentioned in the order. But the complainant, or her assigns, were hampered by no conditions. They were at liberty to apply at any time for a sale; or, probably simply to advertise and sell in conformity with the decree, without any special order or condition whatever. Nor were the essential rights of the complainant in the least impaired. The property was purchased for a sum greatly less than its value. It was continually rising in value, and was amply worth all that it was claimed to be subject to, legally and equitably, to the full amount, interest and costs. And so it would seem Gibbs esteemed it, from the fact that he went on, holding possession "as security," as he says, taking the issues and profits for three years, when he might at any time have proceeded to consummate the foreclosure of the equities of Almy by advertising and selling again.

It seems to us that the order of the court below is eminently just, and can work no harm to either party. Suppose without any proceeding for foreclosure, a mortgagee finds the mortgaged premises vacant after condition broken, and takes, or in any

manner gets possession, equity holds him accountable to his mortgagor for the rents, issues and profits of the premises until the mortgage is satisfied, or the equity of redemption has lapsed by time, or in some other manner extinguished; and surely Gibbs could be in no better condition holding possession obtained under a sale which had been declared void and of no effect.

Again, suppose after the decree and the assignment to Gibbs, he had taken and held possession of the premises without any attempt or pretence of sale, would he not be compelled to account for the issues and profits? And can he be in a better condition when he took possession (as it seems by his affidavit he did) after his purchase had been decreed null and void? It is true, Almy *might* not desire a resale. He might be content to wait until the rents, issues and profits should satisfy the mortgage or decree. But circumstances might be such that a sale would be a preferable mode. But for the purposes of this inquiry it is of no consequence one way or the other. There was no impediment in the way of Gibbs had he desired a sale. As he did not, but took possession of the premises without authority, he must account for the rents, issues and profits of the same.

The order of the court below is affirmed, with costs.