## CONRO & Another v. CRANE & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued January 24th, 25th, 1884.—Decided March 3d, 1884.

### Bankruptcy—Sale.

Property was sold to H, by order of a court of bankruptcy. He not paying for it, the court, without notice to him, vacated the order of sale, and made an order selling it to C, who paid for it, and went into possession of it. Afterwards, on review, the sale to C was set aside, and the sale to H reinstated. H, having paid for the property, received possession of it, and afterwards the money paid by C was repaid to him: *Held*, that C was not liable to pay to H the profits derived by him from the use of the property while he had it.

On the 5th of June, 1875, Harry Fox and William B. Howard, co-partners as Fox & Howard, were adjudged bankrupts, on the petition of their creditors, by the District Court of the United States for the Northern District of Illinois. On the 16th of June, Bradford Hancock was appointed by that court provisional assignee. He took possession of the property hereinafter mentioned, and, on his petition, the court made an order, on June 19th, directing him to advertise for sealed bids for the purchase of the property, either as a whole or in parcels, the bids to be opened by the judge of the court on July 1st. The property consisted of tug-boats, dredges, pile-drivers, and scows, and articles used in connection therewith. On July 2d the assignee reported to the court a bid of $40,000 by Jefferson Hodgkins, for certain of the property, and recommended its acceptance. On July 9th the court made an order approving of and confirming the sale, and directing the assignee, on the receipt of the $40,000, to execute to Hodgkins all transfers necessary to vest in him the title of the bankrupts to the property, and to deliver to him the immediate possession thereof, and to pay the $40,000 into court. On the 12th of July, the assignee presented to the court a sworn petition, setting forth that he had repeatedly called on Hodgkins to pay over to him the purchase-money, and had on July 10th presented to Hodgkins a certified copy of the order confirming the sale and demanded payment of the $40,000, or a deposit on account thereof, and offered delivery of the property on payment; that Hodgkins had neither paid nor deposited anything; that Conro & Carkin (a firm composed of Albert Conro and Willard S. Carkin) had made a bid of $40,500 for the same property, agreeing to assume certain charges; and that he believed it to be for the best interest of the estate that the order confirming the sale to Hodgkins should be set aside, and that the property be sold to Conro & Carkin. On the same day the court made an order *ex parte*, setting aside the order of sale to Hodgkins, annulling such sale, accepting the bid of Conro & Carkin, and directing that the property included in the bid of Hodgkins be sold to Conro & Carkin for $40,500, on the terms of their bid, and that the assignee deliver the property to them, with proper bills of

sale, on their paying to him the $40,500. On the same day Conro & Carkin paid to the assignee the $40,500, and he delivered to them a bill of sale of the property and put the property into their possession.

On the 10th of August Hodgkins filed in the Circuit Court of the United States for the Northern District of Illinois a petition for the review of the order made by the District Court on July 12th. That petition alleged that Charles S. Crane was the principal in the Hodgkins bid. On the 13th of August, the Circuit Court, on a hearing on the petition of review, made an order stating that it was of opinion that the District Court should not have made the order of July 12th without giving Hodgkins or Crane an opportunity to be heard, and directing the District Court to open and set aside that order, and give Hodgkins or Crane an opportunity to be heard on the application to set aside or vacate the order of July 9th, and that in the meantime and until the action of the District Court thereon nothing should be done in relation to the property, by any of the parties, prejudicial to the rights of Hodgkins or Crane.

On the 18th of August, Hodgkins and Crane filed their joint petition in the District Court, praying that the order of July 12th be set aside; that the property be delivered to them; and that Conro & Carkin, the bankrupts, and the assignee pay to them the value of the use of the property from July 12th. The petition alleged that the bid of Hodgkins was made on behalf of and by the direction of Crane, and that the assignee and Conro & Carkin had acted in bad faith. Hancock had been duly appointed assignee in bankruptcy, and he and Conro & Carkin and the bankrupts were made parties to the proceedings, by a rule to show cause. The assignee answered the petition on the 27th of August. Under an order of the district judge the petitioners paid into the District Court, on the 6th of September, the sum of $40,000. On the 13th of September, Conro & Carkin filed a joint answer to the petition. Testimony was taken before a register on the issues raised. The matter was heard by the District Court on the 4th of November, and on the 6th of March, 1876, it made an order dismissing the petition on the merits. On the same day

Crane and Hodgkins filed in the Circuit Court a petition of review, praying for a reversal of the action of the District Court. On the 10th of April, the Circuit Court made an order reversing and setting aside the orders made by the District Court July 12th, 1875, and March 6th, 1876, and confirming its own order of August 13th, 1885. On the 24th of April, the Circuit Court made a further order vacating the order made by the District Court July 12th, 1875, and decreeing that the order made by the District Court July 9th, 1875, remain in full force and effect as originally made, and then proceeding as follows:

"And it appearing that the sum of forty thousand dollars has been paid into the District Court on the sale confirmed to the said Hodgkins on the ninth day of July, A. D. eighteen hundred and seventy-five, and this court being of opinion that upon the payment of the purchase money by the said Hodgkins the order of the ninth day of July aforesaid vested in him from that date all the right, title, and interest of the bankrupts in the property, the District Court is hereby directed to order the assignee to execute and deliver to the said Hodgkins the necessary papers to show the title in the said property, and to cause the assignee to deliver the said property to the said Hodgkins or to the said Crane. And the District Court is hereby directed and required to make all needful rules and orders, summary or otherwise, to carry into effect the said confirmatory order of July ninth, A. D. eighteen hundred and seventy-five. And the District Court is directed to return, subject to the conditions hereinafter stated, to the said Conro & Carkin, the sum of forty thousand five hundred dollars, the amount of purchase money paid by them, the sale to them being hereby annulled and set aside. . . . And there being a question raised as to the rights of the parties growing out of the possession for a time of the property by Conro & Carkin, and of certain moneys paid by them for claims thereon, expenses, improvements, and repairs, as well as the profits, it is ordered that the said Conro and Carkin, or the assignee, or the said Crane and Hodgkins, or either of them, may have the right to file a bill or to commence other legal proceedings in any court having jurisdiction thereof, as they may be advised, to determine the rights or equities of the parties. And the District Court, may, on

the application for that purpose, retain any part of the money now in the District Court and belonging to Conro & Carkin, or require security, before the said money is paid to them, from the said Conro & Carkin, to answer for any claim due from them, growing out of the possession and use of the property, to any party or parties entitled thereto."

Conro & Carkin and the assignee took an appeal, May 3d, 1876, to this court, from that order. On the 5th of May, 1876, Crane and Hodgkins obtained possession of nearly all the property in question by means of a writ of replevin issued from a court of the State of Illinois, and on the 9th of May, 1877, they obtained possession of a pile-driver, a part of the property. The case in this court was docketed here, but was, on motion of the appellees, dismissed for want of jurisdiction, on March 19th, 1877. *Conro* v. *Crane*, 94 U. S. 441. On the 24th of May, 1877, the District Court made an order that Conro & Carkin have leave to withdraw the $40,500 on their giving a bond in the penalty of $30,000, which they gave, with three sureties, conditioned that they would appear without delay to any suit or bill which might be brought against them, by any person concerned, touching the premises, and would pay all claims due from them to any parties entitled thereto, growing out of the use of the property in question. On the same day the $40,500 was paid back to them and the bill in this suit was filed by Crane and Hodgkins, in the Circuit Court of the United States for the Northern District of Illinois, against Conro & Carkin and the assignee.

The bill sets forth the foregoing matters and charges fraud and conspiracy, and alleges that Conro & Carkin derived profits from the use of the property and were the constructive trustees of the plaintiffs in using it, and prays for an account of such profits, and of the expenses incurred in using the property, and of the fair rental value of the property, and of the value of its use, and of the expenses of the plaintiffs in defending their title and obtaining possession of the property, and for a decree against the defendants therefor. The defendants answered the bill, and there were replications to the answers.

The proofs so taken before the register in bankruptcy were used in evidence, and further proofs were taken on both sides. An order of reference to a master was made in June, 1879, under which, after taking further evidence, he reported as to the rental value of the property from July 12th, 1875, during the time Conro & Carkin had it, and as to the amount of profits they derived from it while they had it, and also as to what they paid for repairs on it, and as to what Crane and Hodgkins had paid for fees and expenses in recovering or defending the title to the property in the previous litigations. The appellants and the appellees excepted to the report, and the court made a final decree which contained the following provisions:

"That the said defendants Albert Conro and Willard S. Carkin be held to account for the reasonable value of the use of said property in the pleadings described, while the same was withheld from the possession of the said complainants by the defendants Conro & Carkin, which value, in the judgment of the court, is, in this case, equal to the net profits realized by them from the use of said property other than pile-driver No. 6, from July 12, 1875, to May 5, 1876, being, as the master reports, the sum of fourteen thousand six hundred and ninety-three dollars and seventy-nine cents ($14,693.79), the report of the said master in that behalf being hereby confirmed; and that the said complainants ought to have and recover of the said Albert Conro and Willard S. Carkin the said last mentioned sum, with interest thereon at the rate of 6 per cent. per annum from May 5, 1876; and also that the said complainants are entitled to a decree against the said Albert Conro and Willard S. Carkin for the further sum of three hundred dollars ($300) for the use of pile-driver No. 6, with like interest from the 9th day of May, 1877; and that the said complainants ought to have and recover of the said Albert Conro and Willard S. Carkin the said last mentioned sum with interest as aforesaid. And it further appearing to the court that the said two sums of money and interest thereon as aforesaid amount, at the date of the entry of this decree, to the sum of eighteen thousand and seventy dollars ($18,070.00), it is thereupon further ordered, adjudged, and decreed by the court, that the said com-

plainants do have and recover of the said defendants Albert Conro and Willard S. Carkin the said last mentioned sum of eighteen thousand and seventy dollars, besides the costs of this suit, to be taxed."

From that decree Conro & Carkin appealed to this court.

*Mr. Lyman Trumbull* for appellants.

*Mr. John S. Cooper* for appellees.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court.

He recited the facts in the foregoing language and continued: It is contended by the appellants that the Circuit Court had no jurisdiction of this suit because the assignee was a citizen of the same State with the plaintiffs. But no relief was granted against him by the final decree, and, although the suit was not formally dismissed as to him, it is evident that he was treated throughout as only a formal party. There was jurisdiction by citizenship as to the other parties, and the real controversy was between them. The record does not show that the appellants raised this question in the Circuit Court. Under these circumstances, it is not proper to allow the jurisdiction between the real parties to be now challenged on this ground.

It is also contended that the remedy of the appellees was at law and not in equity. Waiving the consideration of this question, we prefer to dispose of the case on its merits.

We are unable to perceive any relation of trust between the appellants and the appellees. The former were clothed with no fiduciary character as respects the latter, by reason of any relation existing between them prior to the making by the appellants of their bid, nor did the holding of the property by the appellants create such relation. The appellants received the property and paid their $40,500 under the sanction of an order of the court, which not only authorized the sale to them but set aside the order of sale to Hodgkins and annulled such sale. They purchased at a judicial sale, and received the property from the hands of the court. The court made the second order of sale without notice to Hodgkins or Crane. That was

held to be erroneous. On a hearing, the District Court maintained the propriety of the order. On review, the decision was reversed, and the Circuit Court, being of opinion that, on the payment by Hodgkins of the purchase-money, the original order of sale to him vested in him, from July 9th, 1875, all the right, title, and interest of the bankrupts in the property, directed that the District Court order the assignee to deliver to Hodgkins the necessary title papers of the property, and cause the assignee to deliver the property to Hodgkins or Crane. It also directed the District Court to return to Conro & Carkin their $40,500, the order saying, "the sale to them being hereby annulled and set aside." The order did not conclude or determine anything as to any liability of the appellants to any one for profits or rent or value of use of the property. On the contrary, it gave to all parties, the appellants, or the appellees, or the assignee, the right to institute legal proceedings in any competent court to determine the rights or equities of the parties growing out of the possession of the property by the appellants, and out of their having paid moneys for claims, expenses, improvements, and repairs thereon, and out of the profits, as to all of which matters it stated a question was raised. The declaration in the order of the Circuit Court, that Hodgkins, having paid his $40,000, was vested, by the order of July 9th, 1875, from that date, with the title of the bankrupts to the property, did not confer on Hodgkins or the appellees the right to collect rent, or value or profits of use, from the appellants, for the time they had the property. Nor did the provision of the order in regard to the retention by the District Court of part of the money paid by the appellants, or the giving of security by them, have that effect. The question of their liability depended on many other considerations.

There was no privity of contract between the appellees and the appellants. The latter held the property adversely to the former for 8 months and 29 days, and all the time under the authority of an order of the District Court. The appellees recovered possession of nearly all of the property 25 days after the order of the Circuit Court was made. The appellants were

deprived of the use of their $40,500 from July 12th, 1875, to May 24th, 1877, a period extending beyond the time during which they held any of the property, and the money was returned to them only on their giving a bond with three sureties. The appellees succeeded to the title of the bankrupt and the assignee to the property from July 9th, 1875, according to the order of the Circuit Court, but they could have no greater rights in respect to recovering from the appellants for the use of the property after that date than the assignee could have, because they held under him and derived all their rights from him; and he could have none so long as he withheld the $40,-500 from the appellants. He could not keep the money and still have rent for the property. That would be to keep the money and virtually the property too, by recovering for the use of the latter. The legal presumption is that the appellants could, by the use of the money, have procured like property, and made out of it the profits decreed against them.

The rights in question which the appellants acquired by the judicial sale are to be protected so long as the order of sale was in force. Moreover, during the entire period, after the order was reversed as well as before, the court and the assignee retained the money of the appellants. The title of the appellants to the property and their right to keep it as purchasers were, undoubtedly, subject to the result of the litigation had. But a rescission of the sale and the destruction of their title involved, as a necessary element, the return to them of their money, so far certainly as any claim for rent or profits was concerned.

We do not think it necessary to refer to the voluminous testimony adduced on the question of bad faith and fraud. We see no sufficient evidence to impeach the good faith of the appellants, nor do we understand from the opinion of the Circuit Court on the review in bankruptcy, that that court questioned their good faith or fair dealing, whatever views it expressed as to the conduct of the assignee.

The present case has no resemblance to one in which a purchaser has been held entitled to a rebate or allowance from the purchase money of land, for occupation or rent while kept out of possession by a plaintiff, on a sale made by the court in the

suit, and for expenses of obtaining possession. *Thomas* v. *Burton*, L. R. 8 Eq. 120. If the appellees might have been entitled to a deduction from the amount of their bid because of the action of the assignee, the bankrupt estate could not reimburse itself for its loss from such action by making the appellants responsible for it.

Nor does the doctrine applied to a purchaser who buys land with notice of a prior equitable estate apply to the appellants. The District Court vacated the prior sale by the same order which accepted the bid of the appellants, and the order referred to the petition of the assignee, which set forth that Hodgkins had not paid his bid, and there was annexed to the petition a copy of the bid of the appellants, which stated that they made it understanding that Hodgkins had not complied with his proposition. As to the appellants there was, at the time they paid their money, no outstanding contract with or sale to Hodgkins by the assignee. Nor is there any analogy between this case and one of liability by a grantee in a voluntary conveyance held void as made in fraud of creditors, for rents and profits from the property.

The appellees cite the case of *Raun* v. *Reynolds*, 15 Cal. 460. The history of that case, gathered from the above report, and from 11 Cal. 14, and 18 Cal. 275, and *Reynolds* v. *Harris*, 14 Cal. 667, shows that a decree foreclosing two mortgages on land had directed that two different parcels, one covered by one of the mortgages and the other by the other, should be sold together, although one parcel was owned by one mortgagor, and the other by him and another person jointly, as mortgagors, such other person being merely a surety. The property was sold under the decree, at auction, by the sheriff, the two parcels being sold together to the plaintiff. He then sold and assigned the decree, and his rights as purchaser, and the sheriff's certificate of sale, to one Harris. After that the defendants appealed from the decree. The decree was reversed for error in the above directions as to the sale. The time for redemption from the sale having expired without any redemption, Harris obtained possession of the property by a writ of assistance. On an application by the defendants to have the sale set aside and

to be restored to possession, it was held that the plaintiff could obtain no advantage by a purchase under his own erroneous judgment; that Harris was not within the protection of an innocent purchaser without notice; and that he took the plaintiff's claim subject to the defendant's right of appeal and reversal, and occupied the plaintiff's position, with all his rights, as well in the decree and the debt as in the purchase, the decree being unaffected by any payment resulting from the sale. The application of the defendants was granted, and they were restored to possession. A question then arose as to the rents and profits while they were out of possession. Under the foregoing views and as the mortgage still remained valid, to be enforced by Harris, under the decree, the court held that Harris must be treated as a mortgagee in possession, and was bound to credit on the mortgage the amount he had received out of the property. This case is wholly unlike the one before us and affords no support to the claim of the appellees. If anything it goes to show that the appellees might properly have claimed that the assignee should credit on their purchase money the rents and profits of the property during the time they were kept out of its possession by the action of the assignee, which was in the end held to have been unlawful. The case of *Lupton* v. *Almy*, 4 Wis. 242, was a similar one, of a purchaser who owned the decree at the time of the sale, and took possession of the property after the sale had been set aside; and was treated as a mortgagee in possession, and held liable for rents and profits.

*The decree of the Circuit Court must be reversed and the case be remanded to that court, with direction to dismiss the bill.*