## CHARLES E. MORRIS

### *vs.*

### WESTERN UNION TELEGRAPH COMPANY.

Washington.     Opinion December 11, 1900.

*Contract. Stock. Telegraph.*

A contract between a stockbroker and a customer for the sale and purchase of stock is void, when the parties do not intend a delivery of the stock and payment of the purchase price, but only a settlement of the difference between the contract and the market price. The true nature of the transaction is determined not by the form of the contract but by the intention of the parties.

The sender of a telegram relating to such an illegal transaction cannot invoke such a contract, or the gain or loss resulting from it, to measure the damages sustained by him in consequence of it's non-delivery.

ON REPORT.

This was an action of assumpsit for alleged failure of the Western Union Telegraph Company to deliver seasonably a message sent from Eastport to Boston April 18th, 1899, relative to a

contract for stocks. The plaintiff claimed special damages to the amount of $145, claiming that he lost this sum, because, under the special and peculiar terms and usages of his contract, his three-point margin was exhausted and his stock was sold at a loss instead of a profit.

The case appears in the opinion.

*J. H. McFaul*, for plaintiff.

Duties and liabilities of telegraphs. Croswell, Elec. §§ 402, 408, 510, 528, 534; *Ayer* v. *W. U. Tel. Co.*, 79 Maine, 493; *Fowler* v. *W. U. Tel. Co.*, 80 Maine, 381; *Pinckney* v. *W. U. Tel. Co.*, 19 So. Car. 71, (45 Am. Rep. 765); *W. U. Tel. Co.* v. *Reynolds*, 77 Va. 173, (5 Am. & Eng. Corp. Cases, 182; 46 Am. Rep. 715); *W. U. Tel. Co.* v. *Harding*, 103 Ind. 505, (10 Am. & Eng. Corp. Cases, 617); *Fleischner* v. *Pac. Tel. Co.*, 55 Fed. Rep. 738; Croswell, Elec. § 510, p. 450, and cases.

Purchase or sale on margin is a legal method of doing business. 14 Am. & Eng. Ency. Law (2nd. Ed.) p. 608, and cases.

The form of future contract which the law classes as a gambling contract is that in which, at the inception of the contract, it is the intention of the parties thereto not to deliver the chattels bargained for but to settle the differences only. *Rumsey* v. *Berry*, 65 Maine, 570; *Harvey* v. *Merrill*, 150 Mass. 1, (15 Am. St. Rep. 159); *Northrup* v. *Buffington*, 171 Mass. 468.

But if one party intends bona fide delivery and the other does not intend delivery, but intends to settle the differences, such a contract can be enforced at the option of the party intending bona fide delivery. 14 Am. & Eng. Encyc. of Law (2nd. Ed.) p. 611; *Rumsey* v. *Berry*, supra; *Barnes* v. *Smith*, 159 Mass. 344.

*O. D. Baker*, for defendant.

In any event, only nominal damages can be recovered, because no special damages are alleged; and, in fact, no damages at all except through the ad damnum at the end. Special damages must be specially alleged or this fact cannot be proved. See specially *Acheson* v. *Telegraph Company*, 96 Cal. 641, where the writ averred the negligent transmission of a message, and that in conse-

quence thereof the plaintiff lost the purchase (or sale) of a certain commodity, and that his loss thereby was $600. On default the court ordered judgment for the sum thus claimed, but the court above reversed that judgment, holding that under such an allegation, damages could only be nominal.

This case was far stronger for the plaintiff than the case at bar, because here the first and second counts contain no allegations whatever on the subject of damages, either general or special. See also *McAllen* v. *Telegraph Co.,* 70 Tex. 243.

The plaintiff can not recover at all, even under a writ properly drawn, because delay in delivery was due wholly to breaking down of all wires between Eastport and Boston; and this breaking down of wires was due to natural causes against which no diligence on the part of the defendant could avail, and in fact, all due diligence was exercised by defendant to repair the wire damage as early as possible.

The contract relied on between the plaintiff and Rogers & Co. through Hayden, the broker, was an illegal and gambling contract, under which no legal rights whatever could be acquired, neither against Rogers & Co.—who were parties to the illegal contract, and therefore participes criminis—nor, a fortiori, against the defendant, who was innocent of wrong. The plaintiff claims that if his telegram had been seasonably transmitted to Boston, his stock would have been treated as sold at 255 by virtue of this special usage, Rogers and Co. would have paid him back his original deposit of $60 and 4¼ points profits, $85, making a total of $145. But before the telegram was, in fact, delivered in Boston, the price of the stock in New York had declined from 255 to 247¾, and by the special terms of the plaintiff's contract, as understood between the parties, he lost not only his chance for profits, but his original deposit of $60 and the "deal" was at an end. *Bibb* v. *Allen,* 149 U. S. 481, and cases cited. See, also, 1 L. R. A. 140, 141, cases collected in note.

Written contracts for future delivery are not conclusive upon the question of good faith. The real question is, whether the sale is bona fide or merely a wager. *Fortenbury* v. *State,* 47 Ark. 188.

The contract itself, is merely a notice by the local agent of the Boston "bucket shop" that he has "contracted in his own name with Rogers & Co. to buy 20 shares" of stock. It does not, even on its face, purport to be an actual purchase by anybody.

Besides, the fact that by the peculiar custom of Rogers and Co., the plaintiff was at liberty any time to treat his stock as sold and his contract at an end at the closing price of the previous day on the stock exchanges, is, of itself, proof that no actual sale was made or contemplated, because people cannot and do not expect to make actual purchases or sales of a high priced and fluctuating stock, like the Metropolitan, at the identical price at which it was last sold on a previous day, as it might well open on the succeeding day at a price many points advanced from what it closed the day before.

Especially is this point applicable where, by the peculiar usage, the plaintiff's contract is supposed to be "closed" at a time when the stock exchanges of New York are all closed for business, and no sales, in fact, are being made, *i. e.* between the closing of the exchanges at 3 P. M. on one day and their opening at 10 A. M. the next day.

No glozing statement printed in a headline can override these admitted facts, or blind the eyes of the court to the actual nature of this transaction. The actual conduct of the parties, and their special agreements admittedly made, which might nullify the supposed purchase before it could possibly be completed, speak louder than headlines, which parties vainly use to evade the law and dupe the court. *W. Un. Tel. Co.* v. *Harper*, 15 Tex. Civ. App. 37; *Gist* v. *Tel. Co.*, 45 So. Car. 344.

Nor can a recovery be had in such a message against the telegraph company, even though the contract by the law of the state where it was made, was legal, if it is illegal, or contrary to good morals or public policy in the state where it is sought to be enforced. 2 Kent's Com. *458.

As a proposition of law, while it does not necessarily follow that a telegraph company will be liable for such special damages even if they had notice of the special terms of the sender's contract, it does follow as a settled rule of law, that without such notice the

defendant cannot be held. *Hadley* v. *Baxendale*, 9 Exch. 349; *Telegraph Company* v. *Hall*, 124 U. S. 444, at pp. 454, 5, 6. See for a full discussion on this subject, Gray on Telegraphs, §§ 80 to 99 inclusive; 5 Am. & Eng. Encyc. of Law, (1st. Ed.) pp. 13, 14, 15, 16.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

POWERS, J.   On April 15th, 1899, the plaintiff directed one Hayden, a correspondent at Machias, Maine, of F. A. Rogers & Co. of Boston, to buy for him of said Rogers & Co. twenty shares of Metropolitan Street Railway stock at $250 ½ and a quarter added for commission, making $250 ¾, and at the same time deposited with him $60.00 and received from him the following memorandum:

"DUPLICATE.

Trade No. 2.                                      Margin Three Protect.

We solicit and receive no business except with the understanding that the actual delivery of property bought or sold upon orders is in all cases contemplated and understood.

To Mr. Chas. E. Morris;

In obedience to your orders, as your agent, in my own name, I have this day contracted with F. A. Rogers & Co. of Boston to buy twenty shares of Metro. at 250 ¾.

| Date. | Called. | Limit. | Deposit. |
|---|---|---|---|
| Apr. 15 | 250 ¾ | 47 ¾ | 60.00" |

This transaction is termed by plaintiff's witnesses a deal. According to the custom of F. A. Rogers & Co. all deals could be closed and stock treated as sold at any time before ten o'clock the next morning at the closing price of the day before on the New York Stock Exchange, and the difference between the buying and selling price adjusted on that basis. On April 17th the closing price of the stock above named was $255, and before nine o'clock the next morning plaintiff delivered to the agent of the defendant at its office, in Machias, a telegram addressed to said Rogers & Co.

Boston, directing them to "Close Metro., fifty five." At the opening of the Stock Exchange on the 18th this stock fell to 247 ¾ and according to the method of doing business and the understanding between the parties, the plaintiff's "deal was exhausted", his rights under the contract terminated, and his margin of $60 lost. Plaintiff brings this action for the non-delivery of the telegram, and claims to recover as damages the $60 margin, and $85, the difference between the purchasing price, $250 ¾ and $255, the price at which he ordered his deal closed.

If the case stopped here, it might not be difficult to determine the true nature of the dealings between the plaintiff and F. A. Rogers & Co. It is admitted, however, that "in such a transaction or deal, the method of business in the plaintiff's deal is as follows: Such trades are made on quotations only, no actual stock being in fact sold; but settlement of differences are fully made when the deals are closed as to profits or losses." This admission is fatal to the plaintiff's case. It strips the transaction of the semblance of legitimate business with which the memorandum endeavored to clothe it, and leaves it a naked bet or wager upon the rise and fall of the price of the stock, which the law terms a gambling contract, and pronounces immoral and void. The particular disguise, or subterfuge to which the parties have resorted to prevent their real intention from appearing in the terms of the agreement, cannot control. The form is immaterial. To seek to evade the law by using the forms of law is a well known device. In such cases the court will not hesitate to determine and declare the true nature of the transaction. The intention is the crucial test. If the parties at the inception of the contract actually intend that the goods shall be delivered and the purchase price paid then the contract is lawful, but if they intend to settle differences only, then it is unlawful. *Rumsey* v. *Berry*, 65 Maine, 570; *O'Brien* v. *Luques*, 81 Maine, 46; *Dillaway* v. *Alden*, 88 Maine, 230; *Nolan* v. *Clark*, 91 Maine, 33; *Irving* v. *Miller*, 110 U. S. 409; *Embrey* v. *Jemison*, 131 U. S. 336.

In the case at bar, notwithstanding the written memorandum, the parties could not have "contemplated and understood the actual

delivery of property bought and sold" when it is admitted that by their method of doing business no actual stock was in fact sold, but trades were made on quotations only and settlements made of differences only. It would require stronger evidence than this case discloses to satisfy a court that parties engaged in a certain business actually intend in the prosecution of that business to do "in all cases" that which according to their method of conducting the business they never do in any case. The plaintiff had no stock to to sell and the parties never intended the sale of any. His contract with Rogers & Co. was a gambling contract, and no loss growing out of it could in legal contemplation have been suffered by the plaintiff from the defendants failure to deliver the message. "Neither he nor the receiver can invoke the illegal contract, or the gain or loss resulting from it to measure the damage sustained by him in consequence of an erroneous transmission" or non-delivery of the message. 25 Am. & Eng. Encyl. of Law, (1st Ed.) p. 814.

Neither in this case can he recover any price for transmission and delivery, for each count in the declaration alleges that the toll for transmitting, carrying and delivering the message was to be collected from Rogers & Co., and there is neither allegation nor proof that it has ever been paid by any one.

*Judgment for defendant.*