The **COUNTY OF OAKLAND, by George W. KUHN, the Oakland County Drain Commissioner, Alice L. Schoenholtz, David Snyder, and all other persons similarly situated who are end users of the Detroit Sewage System, Plaintiffs,**

v.

**VISTA DISPOSAL, INC., et al., Defendants,**

and

**The United States of America, Auxiliary Defendant.**

No. 86–74656.

United States District Court, E.D. Michigan, S.D.

June 21, 1993.

---

Dickinson Wright Moon Van Dusen & Freeman by Robert P. Hurlbert, Jon R. Steiger, Daniel M. Brinks, Bloomfield Hills, MI, for plaintiffs.

Alan M. Gershel, Acting U.S. Atty. by Elizabeth Wallace Fleming, Asst. U.S. Atty., Detroit, MI, for U.S.

### ORDER DENYING UNITED STATES' MOTION TO DISMISS

GADOLA, District Judge.

On February 26, 1993, plaintiff Oakland County filed a petition for proceedings supplementary to judgment. On April 27, 1993, the United States filed the instant motion to dismiss said petition under Fed.R.Civ.Proc. 12(b)(6). Plaintiff responded May 28, 1993. The United States filed a reply June 4, 1993. Oral argument was heard June 16, 1993.

### I. Facts

The following facts are taken from the brief of the United States:

In 1977, the United States brought a civil action against the City of Detroit and the Detroit Water and Sewerage Department for

unlawful pollution emissions into the Detroit River and Lake Erie. As a result of continued violations of Environmental Protection Agency ("EPA") regulations and pursuant to a consent order between the parties, Judge Feikens entered an order March 21, 1979, appointing Mayor Coleman Young as the sole administrator of Detroit's sludge hauling and disposal functions. The order granted Mayor Young extraordinary and plenary powers and allowed contracts for sludge hauling to be let without competition or city council approval.

That case was the beginning of a plethora of litigation and related appeals.[1]

Relevant to the above-titled action, Detroit businesswoman Darralyn Bowers, in conjunction with Jerry B. Owens, Michael J. Ferrantino, and Sam Cusenza, formed a company called Vista Disposal, Inc. ("Vista"), to submit sludge-hauling proposals to the City of Detroit. Under questionable circumstances, the sludge-hauling contract was awarded to Vista on October 20, 1980.

Bowers, Ferrantino, Cusenza, and several others were indicted by a federal grand jury on February 3, 1983, on charges of conspiracy and violating the Racketeering Influenced Corrupt Organizations Act ("RICO") and the Hobbs Act. On December 10, 1983, Bowers, Cusenza and Valentini were convicted of RICO conspiracy.

On March 8, 1984, Oakland County filed a civil RICO lawsuit against various parties, case number 84–71068, currently styled under case number 86–74656. The complaint alleged, *inter alia*, that the various defendants, through violations of RICO, caused Oakland County to pay "unconscionably and unlawfully inflated" prices for sludge hauling. On March 27, 1992, this court awarded Oakland County a default judgment against Vista, in the amount of $9,762,687.

On January 31, 1984, pursuant to 18 U.S.C. § 1963(c), Judge Feikens entered an order of forfeiture as to defendant Darralyn Bowers, directing her to forfeit immediately to the United States all right, title and interest in

profits and property acquired through Vista. On February 23, 1984, the receivership of Vista was ordered by Judge Feikens to disburse funds to the United States in accordance with the forfeiture order, making due provision for the rights of innocent persons pursuant to 18 U.S.C. § 1963(c).

On September 19, 1984, in accordance with the procedures then in place under 18 U.S.C. § 1963(c), Oakland County submitted to the Attorney General a petition for remission of the forfeited property. In that petition, Oakland County claimed that, as a result of the RICO conspiracy, it had suffered overcharges in a total amount of $7,507,500.

On April 23, 1993, the Attorney General denied Oakland County's 1984 petition for remission. Oakland County now asks this court for relief from that denial in the form of a hearing on Oakland County's petition for remission.

In resolving the instant motion to dismiss, the issue this court must address is whether Oakland County may seek to satisfy its award of default against Vista out of the forfeited property of Vista. For the following reasons, this court holds that Oakland County may assert a valid interest in the forfeited property of Vista. Therefore, the court shall deny the United States' motion to dismiss.

## II. Standard of Review

■ The United States brings its motion to dismiss pursuant to Fed.R.Civ.Proc. 12(b)(6), alleging that plaintiff has failed to state a claim upon which relief may be granted. Upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or 12(c), all allegations in the complaint are to be accepted as true and construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965).

■ The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. *Windsor v. The*

---

1. *See Oakland v. Detroit*, 866 F.2d 839, 841 n. 1 (6th Cir.1989), *United States v. Bowers*, 828 F.2d 1169 (6th Cir.1987), *City of Detroit v. State of* *Michigan*, 803 F.2d 1411 (6th Cir.1986), *County of Oakland v. City of Berkley*, 742 F.2d 289 (6th Cir.1984).

*Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Lee v. Western Reserve Psychiatric Habilitation Ctr.,* 747 F.2d 1062, 1065 (6th Cir.1984).

### III. Analysis

■ Plaintiff claims, *inter alia,* that the United States has deprived it of its due process rights under the Fifth Amendment to the Constitution by not providing a hearing as outlined in 18 U.S.C. § 1963(*l*). The United States claims, *inter alia,* that no hearing was required since the forfeiture took place prior to the 1984 enactment of subsection (*l*).

At the time the United States obtained forfeiture against Darralyn Bowers and Vista, the forfeiture remedy of 18 U.S.C. § 1963 did not specifically mandate that notice or a hearing be provided third parties claiming to hold an interest in the forfeited property. Section 1963(c) simply stated "[t]he United States shall dispose of all such property as soon as commercially feasible, *making due provision* for the rights of innocent persons." 18 U.S.C. § 1963(c) (emphasis added). Pursuant to the Department of Justice's interpretation of this language,[2] the sole remedy provided third parties claiming an interest in property forfeited under the RICO statute was the filing of a petition for remission with the office of the Attorney General in accordance with procedures outlined in 28 C.F.R., Part 9. Those procedures specifically provided that "[n]o hearing shall be held." 28 C.F.R. § 9.3(c).

■ Section 1963, the forfeiture provision of RICO, was amended in 1984 to provide notice and a hearing to third parties claiming an interest in the forfeited property. 18 U.S.C. § 1963(*l*). It is fundamental that due process requires that a property interest shall not be divested without some kind of hearing. *Davis v. Fowler,* 504 F.Supp. 502, 506 (D.Md.1980). To be consistent with the due process requirements of the Fifth Amendment, a criminal forfeiture can only be applied to the assets of a convicted defendant; the assets of a third party cannot be seized or forfeited unless that person is afforded a hearing. *United States v. Rogers,* 602 F.Supp. 1332, 1346 (D.Colo.1985); *see also, United States v. Kramer,* 912 F.2d 1257, 1260 (11th Cir.1990) (Congress created the procedures of § 1963(*l*) because it recognized that third parties are entitled to judicial resolution of their claims); *and see, United States v. Mandel,* 505 F.Supp. 189, 190–92 (D.Md.1981), *aff'd,* 705 F.2d 445 (4th Cir.1983) (third party claimant dissatisfied with Attorney General's decision on remission petition is entitled to bring an independent judicial action seeking relief). Thus, the government's manner of implementing section 1963(c), as outlined in 28 C.F.R., Part 9, violated the Fifth Amendment to the Constitution. The 1984 amendments to 18 U.S.C. § 1963 were enacted to correct the legal deficiencies of that statute.

■ The court also finds relevant the fact that plaintiff's petition for remission was still pending at the time section 1963(*l*) was amended in 1984. Section 1963(*l*) is procedural rather than substantive in nature. *See Rogers,* 602 F.Supp. at 1346. Statutory amendments which merely affect remedies and which are procedural in nature are generally applicable to cases pending at the time of enactment, unless manifest injustice will result from the retroactive application of the statute. *Bush v. State Industries, Inc.,* 599 F.2d 780, 786 n. 9 (6th Cir.1979). The United States makes no argument that manifest injustice would have resulted from retroactive application of the statute. Thus, the Attorney General should have applied the procedures outlined in section 1963(*l*) to the

**2.** The Department of Justice later acknowledged before Congress that third parties are entitled to judicial resolution of their claims. *See United States v. Lavin,* 942 F.2d 177, 185 (3rd Cir.1991) (the 1984 amendments were instituted because the Department of Justice and Congress were troubled by the practice of leaving remission petitions to the total discretion of the Attorney General).

determination of plaintiff's petition for remission.

■ The United States argues that even if 1963(*l*) is held to be applicable to plaintiff's petition for remission (which it is), plaintiff's claim of a property interest in the forfeiture proceeds is barred by the six-year statute of limitations set forth in 28 U.S.C. § 2401. The court finds, however, that plaintiff's petition for remission tolled the running of the statute of limitations until such time as a final determination was rendered by the Office of the Attorney General.[3] In fact, as plaintiff points out, until the Attorney General's office notified plaintiff that it was denying the remission claim without a hearing, plaintiff's rights under the Fifth Amendment had not been violated.

■ Finally, the United States argues that plaintiff "stands in the position of an unsecured judgment creditor" and as such, has no standing to assert a claim against the forfeiture action. The court, however, finds that under Michigan law, plaintiff's interest in the forfeited property, if any be found, would have existed in the form of a constructive trust.

■ Because there is no general federal common law of property, the court must employ applicable state law principles when deciding the nature of an affected party's property interest. *See e.g. United States v. Certain Real Property Located at 2525 Leroy Lane,* 910 F.2d 343, 347 (6th Cir.1990); *United States v. Certain Real Property Located at 750 East Shore Drive,* 800 F.Supp. 547, 549 (E.D.Mich.1992).

■ Under Michigan law,
[W]hen it is shown that title has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, *or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property,* and there are no intervening rights of bona fide purchasers, equity will impress a constructive trust on the property and turn it over to the one to whom it rightfully belongs.

*Potter v. Lindsay,* 337 Mich. 404, 411, 60 N.W.2d 133 (1953) (emphasis added). Thus, a constructive trust is an equitable remedy that is imposed where property is acquired by fraud, undue influence, or other circumstances that render it unconscionable for the wrongdoer to retain title or the benefits derived therefrom. *LeZontier v. Shock,* 78 Mich.App. 324, 333–34, 260 N.W.2d 85 (1977); *McMullen v. Christenson,* 678 F.Supp. 1277, 1280 (E.D.Mich.1987).

The United States claims that plaintiff's interest in the forfeited property did not arise until the default judgment was entered and that therefore, the forfeiture and the illegal acts which gave rise to the forfeiture predated the plaintiff's interest. The court disagrees.

■ It is true that the plaintiff's interest must be superior to the interest of the criminal defendant at the time of forfeiture. *United States v. Campos,* 859 F.2d 1233, 1238–39 (6th Cir.1988). A constructive trust is superior to the possessory interest of the wrongdoer. *Id.; see also United States v. Schwimmer,* 968 F.2d 1570, 1583 (2d Cir. 1992) (holder of a constructive trust imposed as a result of related criminal activity has a cognizable interest under 18 U.S.C. § 1963(*l*)). That is, if it is determined that the forfeited property is in part or whole, traceable to the injury suffered by Oakland County as a victim of the RICO conspiracy,[4] then Vista cannot be said to ever have held title to the property. Vista will be found merely to have held the property in trust for Oakland County. Therefore, Oakland County's interest in that part of the forfeited property traceable to Oakland County's injury as a victim has always been superior to Vista's interest.

---

**3.** Under 28 C.F.R. § 9.3(k), the U.S. Attorney was to withhold further action in the case pending advice from the Assistant Attorney General of the action taken on the request. This regulation indicates that the Department of Justice intended the filing of a petition for remission to stay all further action in the case until such time as the Attorney General's office had issued a decision on the petition.

**4.** See footnote 5.

■ Where a third party's interest in the forfeited property was superior to the criminal defendant's interest at the time the criminal acts were committed, the third party's interest is also superior to the interest the government acquires through forfeiture. *Lavin*, 942 F.2d at 185. The government, through forfeiture, simply steps into the defendant's shoes. *Id.* Thus, the government can acquire through forfeiture no greater interest than the defendant held at the time the defendant committed the criminal acts.

■ In the case at hand, plaintiff Oakland County claims it lost millions of dollars as a result of a RICO conspiracy engaged in by Bowers and others through Vista and other entities. The court finds that clearly a RICO conspiracy could constitute "other similar circumstances which render it unconscionable for the holder of the legal title [that is, Vista] to retain and enjoy the property." Therefore, as to the substantive issue of whether plaintiff has a valid property interest in the forfeiture proceeds, the court finds that plaintiff has stated a claim upon which relief could be granted.[5]

For the foregoing reasons, the court finds that plaintiff has stated a claim upon which relief could be granted.

Therefore, it is hereby **ORDERED** that the United States' motion to dismiss is **DENIED.**

**SO ORDERED.**

---

**5.** The beneficiary of a constructive trust does not have an interest superior to the trustee's interest (the trustee in this case being Vista Disposal, Inc.), in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets. *Schwimmer*, 968 F.2d at 1583, citing *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir.1985) (It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer). Thus, plaintiff will have to show in proving the allegations of its petition which assets of Vista Disposal, Inc., if any, are traceable to the overpayments made by Oakland County.