**In re DOW CORNING CORPORATION, Debtor.**

**Bankruptcy No. 95–20512.**

United States Bankruptcy Court, E.D. Michigan, Northern Division.

Feb. 15, 1996.

case, but its ratio decidendi as well. Specifically, I must decide HOW the Court of Appeals for the Sixth Circuit decided as it did in *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir.1994).

No one disputes the facts, which were stated in the movant's original motion ("Motion"). As set forth there, Wilfarm LLC is a customer of Dow Corning Corporation (the "Debtor"). On March 7 and 8, 1995, the Debtor invoiced Wilfarm for an order of Sylgard 309 silicone surfactant which the Debtor delivered in two truck shipments to Wilfarm per its purchase agreement. On April 12, 1995, a Dow Corning employee called Wilfarm inquiring about payment. Wilfarm was only recently formed out of the merger of two other companies. The Debtor mailed the original invoices to an office which no longer handled the accounts payable function, which apparently was the cause for the delay in payment. When this fact was brought to the Debtor's attention, it faxed the two invoices to the new Wilfarm accounts payable office. On April 17, 1995, Wilfarm's payment clerk then mailed the Debtor its check for $304,198.32. The following day, the original invoices arrived from Wilfarm's former accounts payable office. A different Wilfarm payment clerk issued another check covering the same two invoices.[1] The Debtor received both checks and deposited them in its general account. Both checks cleared. Everyone agrees that this is a case of simple clerical mistake as the second payment was made in error. The parties differ greatly however, as to the consequences which flow from this fact.

On May 15, 1995, Dow Corning filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101 *et seq.*[2] On August 11, 1995, Wilfarm filed a "Motion for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)." After reciting the above facts and characterizing its view of the law applicable to them, Wilfarm requested "this Court [to] lift the automatic stay . . . and allow the debtor to send to the

Barbara J. Houser, Sheinfeld, Maley & Kay, P.C., Dallas, TX, for Dow Corning Corporation.

## OPINION ON CONSTRUCTIVE TRUSTS IN BANKRUPTCY

ARTHUR J. SPECTOR, Bankruptcy Judge.

### Introduction

This dispute requires the interpretation not just of the holding of a recently-decided

---

1. When issuing the first check, the clerk did not pay the amount invoiced for sales tax because Wilfarm was not the end user of the product. The second clerk went ahead and paid the total unadjusted invoice amounts, $329,294.69.

2. All statutory references are to the Bankruptcy Code, title 11 United States Code, unless otherwise noted.

movant the amount of ... $329,294.69 ...."
Motion, p. 5 (emphasis added). Additionally, in its accompanying brief, "Wilfarm requests that this Court grant Wilfarm's motion for relief from the automatic stay, and *require* Dow Corning to transfer the mistaken payment back to Wilfarm." Wilfarm's Memorandum in Support of Motion, p. 10 (emphasis added).

As a preliminary matter, and notwithstanding that other courts have seemingly found nothing untoward about the procedure,[3] I confess confusion over the form of relief requested. Certainly, a bankruptcy court may grant a movant relief from the stay. Once the stay is lifted, the movant is then free to take an action from which it was previously enjoined, such as the commencement of a suit against the debtor. However, Wilfarm does not need relief from the stay to request relief from the bankruptcy court. *See In re Briggs,* 143 B.R. 438, 454–55 (Bankr.E.D.Mich.1992).

If what Wilfarm wants is an order giving the Debtor permission to return the $329,-294.69, a victory on the motion would be hollow. The Debtor, by strenuously resisting the motion, makes it obvious that it would not voluntarily repay the money. On the other hand, if Wilfarm is actually requesting an order compelling the Debtor to pay it money, the procedure runs afoul of F.R.Bankr.P. 7001(1). This rule states that, with exceptions not relevant to this matter, a proceeding "to recover money or property" is an "adversary proceeding" which necessitates the filing of a complaint and the service of a summons and a copy of the complaint upon a "defendant." Further, if the request is in effect asking for a mandatory injunction, the procedure runs afoul of Rule 7001(7) which requires an adversary proceeding "to obtain an injunction or other equitable relief."

The Debtor and the Official Committee of Tort Claimants objected to the motion, but failed to raise these procedural points. This, in itself, might be enough to allow me to overlook the procedural peculiarities. But, more importantly, the fact that I will deny on the merits any of the various forms of relief requested by Wilfarm moots any further discussion of procedure.

Because the motion nominally requested relief from the stay, a preliminary hearing was timely scheduled. Wilfarm put forth two separate grounds for relief, both of which are based upon Michigan law. First, it asserted that a party who mistakenly pays money to another, retains "equitable title" in that money. Accordingly, Wilfarm argued that the Debtor obtained no more than bare legal title, subject to Wilfarm's equitable interest and that the money should, therefore, be excluded from the bankruptcy estate pursuant to § 541(d). As an alternative, Wilfarm claimed that it is entitled to an order "impressing a constructive trust ... to divide legal title from the equitable interest in the mistaken payment...." Wilfarm's Memorandum in Support of Motion, p. 6.

In its responsive brief, the Debtor counter-argued that both of Wilfarm's theories are foreclosed by *Omegas, supra.* The stay was continued pending a final hearing. Because I believed that *Omegas* defeated Wilfarm's alternative constructive trust theory, the sole issue identified for trial (really legal argumentation since the facts were never in dispute) was "whether equitable title [to the money] remains with Wilfarm." Pre-Trial Order of September 9, 1995. At the final hearing, I reconsidered the effect of *Omegas,* and gave Wilfarm the opportunity to brief the issue anew. After receipt of several more sets of briefs, the question was reserved for the decision which follows.[4]

---

**3.** *See, e.g., In re Howard's Appliance Corp.,* 874 F.2d 88 (2d Cir.1989) (issue arose in motion for relief from the stay).

**4.** I have come to accept the view that the alternate forms of relief requested by Wilfarm are the same. A party claiming an equitable right in property must bring its cause in a court of equity. 30A C.J.S. Equity § 57 (1995). Logically, this step is required because the court of equity must

give expression to the notion that the complainant possesses the equitable interest in the property held by the defendant. *See* G. Bogert & G. Bogert, *The Law of Trusts and Trustees,* § 471, at 6 (Rev.2d ed. 1978). Prior to the court issuing such a decree, an equitable interest is nothing more than an equitable claim. That Michigan law may not have expressly said so each time the

## A Brief History of Constructive Trusts and its Emergence in Bankruptcy

The use of constructive trusts as a form of relief against unjust enrichment has its beginnings in seventeenth century England. 1 George E. Palmer, *The Law of Restitution* § 1.3, at 9–12 (1978). Until recently, the remedy remained limited under English law in that it required the presence of a fiduciary relationship. *Id.* By necessitating such a relationship, English courts retained a connection (or confusion) between constructive trusts and express trusts. *Id.*[5]

American courts greatly expanded use of constructive trusts by eliminating the requirement of a fiduciary relationship. *Id.* at p. 12. This development drew a line of distinction between express and constructive trusts and led to the general view that the circumstances giving rise to a constructive trust are virtually limitless. *See McKey v. Paradise,* 299 U.S. 119, 122, 57 S.Ct. 124, 125, 81 L.Ed. 75 (1936).

Interestingly, English law now seems to be leaning toward the more expansive American view. In *Chase Manhattan Bank v. Israel British Bank (London) Ltd.,* [1981] Ch. 105, the court held that one who makes a mistaken payment not due is entitled to the benefit of a constructive trust. Palmer, *The Law of Restitution* § 1.3 at 12 n. 11 (Supp. I 1995) Although the court stated that the mistaken payment created a fiduciary relationship, the holding, in actuality, seems to dispense with the requirement. *Id.*

The use of constructive trust in bankruptcy also has a long history in American law. References to this remedy can be found in bankruptcy cases dating back to the 1800's. *See Conro v. Crane,* 110 U.S. 403, 407, 4 S.Ct. 102, 104, 28 L.Ed. 191 (1884); *Graham v. Boston H. & E.R. Co.,* 118 U.S. 161, 173–74, 6 S.Ct. 1009, 1015–16, 30 L.Ed. 196 (1886). Since that time, literally hundreds of bankruptcy cases have recognized the constructive trust doctrine. For example, in *In re*

*Berry,* 147 Fed. 208, 210–11 (2d Cir.1906), the court imposed a constructive trust on $1,500 paid under the mistaken impression that a debt was owing when in fact it was not.

On a number of occasions, the United States Supreme Court has at least impliedly recognized the applicability of constructive trusts within the bankruptcy context. In *Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924), several creditors who had been defrauded through a financial scheme masterminded by Charles Ponzi (the debtor and namesake of the infamous "Ponzi scheme"), requested imposition of a constructive trust on money in Ponzi's bank account. The Court denied imposition, but only because the creditors were unable to trace their individual payments. *Id.* In *McKey, supra,* the Court said that "[i]t would be impossible to state all the circumstances in which equity will fasten a constructive trust upon property ... [b]ut the mere failure to pay a debt does not belong in that category." 299 U.S. at 123, 57 S.Ct. at 125. The Court again addressed the issue in *Jaffke v. Dunham,* 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957), where it held that whether there was sufficient evidence to establish a constructive trust was a question of state law.

While declining to impose a constructive trust on the facts there, I, too, recognized that the remedy is appropriate within bankruptcy in *Cook v. United States (In re Earl Roggenbuck Farms, Inc.),* 51 B.R. 913, 922 (Bankr.E.D.Mich.1985).

However, there has existed for some time an undercurrent of dissatisfaction concerning the appropriateness of constructive trusts in bankruptcy. *See, e.g., Torres v. Eastlick (In re North American Coin and Currency, Ltd.),* 767 F.2d 1573, 1575 (9th Cir.1985) ("We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors,

matter arose does not change its theoretical underpinnings.

**5.** As is often stated by courts and commentators, a constructive trust is not an express trust. Instead, it is an equitable remedy that developed by

analogy to an express trust. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1449 (6th Cir.1994), (citing Emily L. Sherwin, *Constructive Trusts in Bankruptcy,* 1989 U.Ill.L.Rev. 297, 301 (1989)).

for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws."); *Neochem Corp. v. Behring Int'l, Inc. (In re Behring Int'l, Inc.),* 61 B.R. 896, 902 (Bankr.N.D.Tex.1986) ("Imposition of a constructive trust clearly thwarts the policy of ratable distribution and should not be impressed cavalierly."); *The Oxford Organisation, Ltd. v. Peterson (In re Stotler and Co.),* 144 B.R. 385, 388 (Bankr.N.D.Ill.1992) ("[A] constructive trust is fundamentally at odds with the general goals of the Bankruptcy Code.").

### The *Omegas Group* Decision

■ In the Sixth Circuit, it seemed that all questions concerning constructive trusts in bankruptcy were settled by *Omegas* in 1994. In the broadest language, the court held that one who does not have a court judgment declaring that the debtor holds particular property in constructive trust for it, possesses no more than a general claim to a share of the bankruptcy estate. For example, the court stated:

> [A] claim filed in bankruptcy court asserting rights to certain assets "held" in "constructive trust" for the claimant is nothing more than that: a claim. Unless a court has already impressed a constructive trust upon certain assets ... [6] the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor.

*Omegas,* 16 F.3d at 1449. The court added: We think that § 541(d) simply does not permit a claimant in the position of [the creditor] to persuade the bankruptcy court to impose the remedy of constructive trust for alleged fraud committed against it by the debtor in the course of their business dealings, and thus to take ahead of all creditors, and indeed, ahead of the trustee. Because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to judgment "impressing" defendant's property or assets with a constructive trust. Therefore, a creditor's claim of entitlement to a constructive trust is not an "equitable interest" in the debtor's estate existing prepetition, excluded from the estate under § 541(d).

*Id.; see also id.* at 1452 ("But the equities of bankruptcy are not the equities of the common law.").

These statements surely point to the conclusion that a party in the position of Datacomp (the creditor in *Omegas* ) can expect no relief that is different from the mass of other disappointed creditors. Moreover, these statements initially suggest that the court's underlying reasoning stemmed from its interpretation of state law. That is, that under Kentucky law a constructive trust arises only by operation of law and does not relate back to the time of the unjust enrichment. As such, the money could not be excluded from the bankruptcy estate per § 541(d), leaving Datacomp with nothing more than a claim. But the opinion has so many broad statements—some of which are clearly in error [7]

---

**6.** The omitted portion of the quote reads: "... or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust...." This language was purposely removed from the quote because it is simply another of the many perplexing statements made by the majority in *Omegas.* Constructive trusts were a creation of common law equity and remain to this day a remedy exclusive to its province. As the court in *Omegas* acknowledged, a constructive trust arises "only by the grace of judicial decree." *Omegas* 16 F.3d at 1449. On the other hand, when a state legislature enacts a statute requiring Party A to place in trust certain funds held for the benefit of Party B, such statute creates an express trust not a constructive trust. *Cf., Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 252–53 (6th Cir.1982) (held that when the requirements of the Michigan

Building Contract Fund Act, Mich.Comp.Laws § 570.151–153, are satisfied, an express or technical trust is created between the contractor and certain beneficiaries). Consequently, discussion of statutorily created trusts (such as the majority's divergent discussion of *Selby v. Ford Motor Co.,* 590 F.2d 642 (6th Cir.1979), a case involving a statutorily created *express* trust on construction funds) is irrelevant when discussing the appropriateness of imposing a constructive trust in bankruptcy.

**7.** The majority in *Omegas* embarked upon a long dissertation about § 523 to support its conclusion that Datacomp had an available remedy other than constructive trust. Clearly this is an error. Omegas was a corporation and a corporation receives no chapter 7 discharge. 4 *Collier on Bankruptcy,* ¶ 727.01[2] p. 727–7 (15th

and others which are simply perplexing,[8] that it is more important than ever for a trial court to attempt to discern the actual rationale and not be lost by the rhetoric. Therefore, the remainder of this opinion is a quest for the reasoning underlying the *Omegas* holding.

### Wilfarm's Argument

Wilfarm argued that *Omegas* should be read narrowly. Its view was that *Omegas* held only that one asserting the status of a beneficiary of a constructive trust *arising from the fraud of the debtor* must have a judgment so declaring. Wilfarm's Memorandum in Support of Motion, pp. 6–7. While it is true that *Omegas* concerned a creditor who alleged fraud as its basis for the imposition of a constructive trust, this fact is beside the point.

A constructive trust can be imposed for a multitude of purposes. In Michigan, the substantive basis for imposing a constructive trust can "be based upon breach of fiduciary or confidential relations, misrepresentation, concealment, *mistake*, undue influence, duress *or fraud.*" *Grasman v. Jelsema*, 70 Mich.App. 745, 752, 246 N.W.2d 322 (1976) (emphasis added); *Chapman v. Chapman*, 31 Mich.App. 576, 580, 188 N.W.2d 21 (1971). *See also* Restatement of the Law of Restitution, Quasi Contracts and Constructive Trusts (1937) ("Restatement"), § 160 "Constructive Trust," Comment e:

ed.1995). Therefore, § 523, by its own terms, is inapplicable. "A discharge under § 727, § 1141 ... does not discharge an *individual debtor* from any debt—" 11 U.S.C. § 523(a) (emphasis added).

8. For example, in *dictum*, the court seemed to create a semantic distinction which it never explained between a constructive trust claimant "entitled to priority ... [over the trustee] as a secured creditor" and a constructive trust claimant "entitled to ... super priority to the trustee...." *Omegas*, 16 F.3d at 1451. *See also id.* at 1450 n. 7 ("[A]bsent a specific state statute to the contrary, constructive trusts are not properly invoked to gain superpriority over the trustee in bankruptcy"). I confess that I do not understand what "superpriority" is being considered and what relevance it would have if a simple "priority" would give a claimant the status of "a secured creditor."

Moreover, the above-cited quote from footnote 7 of *Omegas* is characterized by the court as its "general conclusion". *Id.* But it is not entirely

e. Legal and equitable remedies. Where property is held by one person upon a constructive trust for another, the latter has the beneficial interest therein. In many cases the beneficiary of the constructive trust can by a proceeding in equity compel the constructive trustee to transfer the property to him in specie; he is entitled to specific enforcement of the constructive trust. This is true, for example, where the title to land or unique chattels is obtained *by mistake or fraud.*

(emphasis added).

The illogic of Wilfarm's position was exposed in colloquy at the hearing. In this case, the money was paid to the Debtor due to a mistake by Wilfarm and without complicity by the Debtor. Yet Wilfarm admitted that someone who showed that its loss was due solely to the misdeed(s) of the debtor presented a more sympathetic claimant and would be denied equitable relief under *Omegas*. Wilfarm could not explain why equity should be more solicitous of the less sympathetic victim. Thus there seems to be no philosophical reason to treat a "victim" of mistake any differently than a victim of fraud when applying constructive trust jurisprudence. I therefore reject Wilfarm's suggestion to distinguish *Omegas*.

### Was the *Omegas Group* Decision Based Upon An Interpretation of § 541?

Most courts imposing constructive trusts in bankruptcy have done so under the gener-

clear that this was the precise holding of the court. From other comments in the majority opinion, it seems that if the claimant brought proof that a state court judge had declared a constructive trust for the claimant's benefit, that declaration would be entitled to as much weight as a state statute. *See Omegas*, 16 F.3d at 1449 ("Unless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust...."). *Id.* ("Because a constructive trust ... is a remedy ... it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to judgment 'impressing' defendant's property or assets with a constructive trust."). Therefore, it is an overstatement to say that "constructive trusts are not properly invoked ... in bankruptcy;" instead, the court's "general conclusion" is more precisely stated as "constructive trusts, *not formally declared by a court prior to the bankruptcy* are not properly invoked ... in bankruptcy."

al authority of § 541. *See, e.g., City Nat'l Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.),* 828 F.2d 699, 705–06 (11th Cir.1987); *Vineyard v. McKenzie, (In re Quality Holstein Leasing),* 752 F.2d 1009 (5th Cir.1985). Section 541(a) expansively defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad language is then limited by § 541(d) which provides that when the equitable interest in property is possessed by one other than the debtor, such equitable interest does not become part of the estate. *See* 11 U.S.C. § 541(d). Consequently, this approach necessitates a determination of each party's rights with respect to the property in question.

As a general rule, "[p]roperty interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *see also Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39, 46 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law.") Something can conceivably be "property" in one state—in which case the bankruptcy estate of the party owning it also owns it—and not "property" in another state—in which case the bankruptcy estate would not own it. While the *Omegas* majority opinion did not begin there, it acknowledged this point. *See* 16 F.3d at 1450 n. 7 ("The existence of parties' property rights in bankruptcy depends on state law. *See, e.g., Butner v. United States....").*[9]

Having acknowledged this underlying premise, however, the majority opinion never fully discussed the state law in question. Instead, in a footnote, it characterizes Kentucky law as "at best unclear," *id.,* and as not saying "for certain whether a debtor-creditor

relationship may give rise to a constructive trust." *Id.*

It is not explained why the question is so curiously stated. By characterizing the parties as having "a debtor-creditor relationship," the majority assumed away the question.[10] A party becomes a creditor and therefore enters into a debtor-creditor relationship with the debtor at the moment the debtor defrauds it out of property. There certainly is no good policy reason why someone who is defrauded in a business deal should lack equitable remedies under state law that a non-business victim would otherwise possess, nor did the majority opinion suggest any.

The view that a constructive trust should not be imposed when the parties are merely in a debtor-creditor relationship is widespread. *See McKey,* 299 U.S. at 123, 57 S.Ct. at 125. But it is subject to the above criticism. Perhaps *Omegas* and other courts mean that a party who becomes a creditor through a contractual relationship with the debtor should not be heard to argue for a constructive trust. If this is what is meant, the point is obvious, since constructive trusts do not arise out of contractual relations, but out of unjust enrichment. A company cannot establish a basis for constructive trust due to unfulfilled promises by the debtor. But under traditional notions of equity, it should be able to argue for a constructive trust if it can show that the debtor made promises it knew it could not or intended not to perform, even if the transaction was a business deal.

Moreover, since the focus of analysis is what state law says about the rights of a party in Datacomp's position, one would have expected any discussion of Kentucky law to have been more centrally placed and less perfunctorily covered. As such, I have concluded that analysis of Kentucky state law on constructive trusts does not provide the reasoning for the majority decision in *Omegas.*

**9.** In recognizing this point, it is curious that the *Omegas* majority opinion did not instead cite the more precise holding in *Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957) that the imposition of a constructive trust in bankruptcy is determined by state law.

**10.** Nor is this taxonomy particularly helpful. Someone can become a "creditor" as a result of the "debtor's" fraudulent conduct. In bankruptcy, anyone with a claim against the debtor is a "creditor." 11 U.S.C. § 101(10). Section 523(a) acknowledges that a party's right to "creditor" status may arise from fraud. And the counterpart to the creditor, of course, is the "debtor."

Perhaps, then, notwithstanding its nod to *Butner*, the majority opinion is premised solely on a textual interpretation of § 541. Putting aside the fact that § 541(a)(1) includes the word "property" which of course, requires an examination of the state's definition of that word, the language of this section is not so clear as to be beyond construction. And the majority did not claim that these words were so plain as to be beyond the need for explication.

Legislative history dealing with these very words shows unmistakably that Congress, the author of the statute, intended that a debtor who holds property subject to a *constructive trust* holds bare legal title only, subject to the rights of the equitable owner. *See* S.Rep. No. 989, 95th Cong.2d Sess. 82, reprinted in 1978 U.S.Code Cong. & Admn. News 5787, 5868 ("Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in *constructive trust* for the person to whom the bill was owed." (emphasis added)).[11]

Many things can be said about this snippet of legislative history. For one, the hypothetical doctor was in as much a debtor-creditor relationship with the hypothetical debtor as Datacomp was to Omegas. According to Congress, at least, there is nothing inconsis-

tent with a constructive trust arising from a debtor-creditor relationship.

Second, and more importantly, this quote seems to conclusively show that Congress included constructive trusts among the types of remedies which result in a separation of legal and equitable title. The majority opinion in *Omegas* stated that "nowhere in the Bankruptcy Code does it say, 'property held by the debtor subject to a constructive trust is excluded from the debtor's estate.'" 16 F.3d at 1448. The obvious response is that the Code does say that the estate obtains only bare legal title when that is all the debtor possesses at commencement of the bankruptcy case; and Congress explained that this formula should apply when the debtor has obtained its interest in the property in a manner which would justify the imposition of a constructive trust in favor of the victim. Because this quote from the legislative history is so oft-cited, the court could not have simply missed it. One must speculate, therefore, that textual analysis of § 541 is also not the source of the outcome in *Omegas.*

## Was the *Omegas Group* Decision Based Upon An Interpretation of § 544?

Given the majority opinion's unclear reasoning, was Judge Guy's concurring opinion an attempt to provide the rationale? The concurring opinion rested on state law. Instead of addressing the question directly as one of the proper interpretation of § 541(a) and (d), it used state law in conjunction with the trustee's strong-arm powers under § 544(a).[12] Judge Guy concluded that the

11. This quote is frequently cited as an explanatory reference to § 541(d). *See, e.g., Vineyard v. McKenzie (In re Quality Holstein Leasing),* 752 F.2d 1009, 1013 n. 9 (5th Cir.1985). However, a reading of the surrounding text suggests it is actually a reference to § 541 in general.

12. Courts imposing constructive trusts in bankruptcy have often commented on the apparent tension between §§ 541(d) and 544(a). This tension arises from the fact that § 541(d) excludes certain equitable interests from the bankruptcy estate, while § 544(a) permits the trustee to bring certain tainted property into the control of the estate. *See City Nat'l Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.),* 828 F.2d 699, 704 (11th Cir.1987).

Some courts have responded to this tension by holding that § 541(d) prevails over the trustee's strong-arm powers under § 544(a). *See, e.g., Cook v. United States (In re Earl Roggenbuck Farms, Inc.),* 51 B.R. 913, 917 (Bankr.E.D.Mich. 1985) (This Court concluded that "[i]f a creditor holds an equitable interest in property, the trustee may not avoid that interest by resorting to section 544(a)."); *see also Quality Holstein Leasing,* 752 F.2d at 1013; *Bavely v. Ft. Thomas Bellevue Bank (In re Triple A Coal Co.),* 55 B.R. 806, 813 (Bankr.S.D.Ohio 1985). In *Quality Holstein Leasing,* the court stated that even though § 544(a) enables a trustee to assert rights that the debtor itself could not claim to property, Congress did not intend to authorize a bankruptcy estate to benefit from property not owned by

trustee, in his persona as a judgment creditor with an execution against property owned by the entity who eventually becomes a debtor under title 11, would prevail under Kentucky law against a party requesting that the asset be impressed with a constructive trust in its favor. Accordingly, in his view, even if under Kentucky law Datacomp would be entitled to a constructive trust against Omegas before bankruptcy, that right would be cut off by a judgment lien creditor, and therefore the bankruptcy trustee. Was this the underlying rationale of the majority, which was lost within the broad rhetoric? And what is the result in this case if the concurring opinion's analysis is applied here?

The way Wilfarm and the Debtor framed the issue, the question is whether, under Michigan law, the equitable title of a "beneficiary" of a constructive trust "relates back" to the time of the events leading to the remedy. As the wording of this question suggests, and notwithstanding Judge Guy's approach, this step in the analysis typically occurs only after there has been a determination that state law would in fact allow imposition of a constructive trust. It is only at this time that the priority question needs to be addressed. If the equitable title of a constructive trust beneficiary relates back to the time of the events leading to the remedy, then Wilfarm ought to prevail, and vice versa.

In actuality, the parties divided this issue into two separate questions. First, does the constructive trust relate back to the prepetition occurrence giving rise to the claim, thus excluding the claimant's equitable interest from the debtor's estate per § 541(d)? Second, if the constructive trust does relate back, can the trustee (or debtor in possession) avoid the claimant's equitable interest through the use of § 544(a)'s strong-arm powers?

These two questions, however, are really one and the same, because the only time relation back is an issue is when the rights of an innocent third party (who obtained title to the property in question from the putative constructive trustee) are involved. If the innocent third party acquires rights in the property which, when acquired, are inferior to those possessed by one holding a claim to entitlement to a constructive trust then as between these two parties the constructive trust claimant will prevail. In essence then, the constructive trust, once imposed, will have a retroactive effect and relate back to the time of the unjust enrichment. On the other hand, if the innocent third party acquires rights in the property which are better than those possessed by the party seeking a constructive trust decree, then the innocent third party will have priority. In such an instance, the constructive trust obviously does not relate back.[13]

---

the debtor and any other interpretation would render § 541(d) meaningless. 752 F.2d at 1013.

Other courts have held that §§ 541(d) and 544(a) operate independently and that property excluded from the estate under § 541(d) may still come into the estate pursuant to § 544(a). *See, e.g., McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995, 1009–10 (Bankr.M.D.Tenn.1983); *Belisle v. Plunkett*, 877 F.2d 512, 515 (7th Cir.), *cert. denied*, 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989); Sherwin, *Constructive Trusts in Bankruptcy* at 322.

The second approach has troubled some courts because of the fact that it seems to contradict the language of § 541(d). In spite of this, support for the second approach can be derived from language in the Bankruptcy Code. Section 541(d) states that it only applies to property brought into the estate pursuant to §§ 541(a)(1) and (2). Property brought into the estate pursuant to the trustee's § 544(a) strong-arm powers enters through §§ 541(a)(3) and (4) via §§ 550 and 551. Based upon this reasoning, §§ 541(d)

and 544(a) appear to operate independently. Using this approach, it is conceivable for § 544(a) to trump § 541(d). This second line of reasoning was adopted by Judge Guy in his concurring opinion.

13. The hypothetical context in which this priority contest would arise is as follows:

A swindles B out of his expensive painting on July 1, 1994. On February 1, 1995, B sues A to recover the painting, asserting constructive trust theory. On May 1, 1995, C, a judgment creditor of A's, levies an execution on the painting. On August 1, 1995, B sues C to enjoin the sale of the painting at execution and for a determination that C's rights in the painting are no greater than A's and that B's entitlement to the painting is supreme. B's case against A has not yet come to trial, so no determination as to B's right to the remedy of constructive trust has been rendered. What does the state court rule in the action between B and C?

In bankruptcy, the innocent third party is the trustee (or debtor in possession). Therefore, a constructive trust will only relate back, and thus exclude the property in question from the debtor's estate pursuant to § 541(d), if state law provides that the rights of a constructive trust beneficiary are superior to the trustee's § 544(a) strong-arm powers.

In its supplemental brief, Wilfarm argued that the question was answered already in *McTevia v. Adamo (In re Atlantic Mortgage Corp.),* 69 B.R. 321, 328 (Bankr.E.D.Mich. 1987). In that case, Judge Rhodes, relying on *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.,* 259 Mich. 489, 244 N.W. 138 (1932), held that under Michigan law, constructive trusts relate back. *Atlantic Mortgage* certainly does so hold. However, I believe its reliance on *Soo Sand & Gravel* is misplaced. To properly hold that Michigan follows the relation-back doctrine, a case must be found where that doctrine is essential to the result; i.e.: the innocent party who lost was defeated only because the constructive trust claimant's rights related back to a time prior to the fixing of the loser's interest. This does not exist in *Soo Sand & Gravel.*

In *Soo Sand & Gravel,* the plaintiff was a corporation suing the defendant for trespass. However, by a conveyancing error, the actual legal title to the land in question was in a third party. None of the parties was a judgment lien creditor nor an innocent third party who obtained title from a wrongdoer (or unjust recipient). The defendant argued that the plaintiff could not maintain the action. The Michigan Supreme Court disagreed, holding that the land and therefore the cause of action for trespass belonged to the corporate plaintiff. While the opinion contained language to the effect that if it "should be essential," a subsequently executed deed might "relate back" to an earlier time, 244 N.W. at 140, the statement has little, if any relevance to the case at bench. In *Soo Sand & Gravel,* the two parties who had nominally competing claims to legal title were the corporation, which in fact was the actual purchaser, and the corporation's majority shareholder, into whose name the property was incorrectly conveyed. The shareholder did not contest that the corporation was entitled to a corrected deed. One could say that the court considered him an agent who took title on behalf of the corporation. The defendant really had no business arguing the shareholder's claim. Therefore, the statement that a court may hold that a corrective deed relates back when relation back is "essential," is really *dictum* because it was clearly not essential or even helpful in that case. As stated above, the acid test is whether relation-back will be applied to defeat the rights of a judgment creditor who in good faith levies execution on a res which was obtained by the judgment debtor through fraud or mistake.

Wilfarm also cited a more recent Michigan Court of Appeals case in support of its view that "Michigan courts uniformly hold that constructive trusts relate back." Wilfarm's Post–Hearing Brief at p. 6. Although the Court of Appeals in *Sloan v. Silberstein,* 2 Mich.App. 660, 141 N.W.2d 332 (1966) held that the constructive trust arose in 1964, as opposed to the date the appeals court decision was released in 1966, the opinion contains no explanation for this ruling. In fact, the court's so-called relating the effective date back to January 1, 1964 cuts against Wilfarm's position. In *Sloan,* the improper acts of the defendant, who was found to have violated his fiduciary duties by using trust funds for his personal gain, obviously occurred well before January 1, 1964, since the lawsuit began in 1959. And, once again, nobody in *Sloan* was an innocent judgment creditor who levied on the trustee's accounts which contained the embezzled funds. It should not be very hard for a court, willing to declare a constructive trust to deprive a wrongdoer of his gain, to declare that the constructive trust it uses to do so will relate back to an earlier time if it is necessary to complete the task.

As we will see, under Kentucky law, as Judge Guy saw it, C would prevail. Under Michigan law, as I see it, B would prevail.

Finally, Wilfarm cited *County of Oakland v. Vista Disposal, Inc.*, 826 F.Supp. 218 (E.D.Mich.1993). In that case, Oakland County had a $9.7 million RICO judgment against Vista. But the district court ordered Vista's property forfeited to the United States for similar wrongdoing. The county petitioned for remission of the forfeited property. The United States moved to dismiss the petition. The court held that if the county could prove that its loss was due to Vista's fraud and then trace its loss to the forfeited property, "then Vista cannot be said to even have held title to the property." 826 F.Supp. at 223. The United States argued that the county's "interest in the forfeited property did not arise until the default judgment was entered and that therefore, the forfeiture and the illegal acts which gave rise to the forfeiture predated the [county's] interest." *Id.* Unfortunately, although the court asserted that Michigan law provides the rule of decision, it cited no Michigan case in support of its ultimate conclusion that the county's rights were fixed at the time of its loss, and not when it received its judgment. While *Vista* presents the closest case on the facts to the issue at bench because it involves two innocents—the county (as "victim") and the United States—it is unsatisfactory because its reasoning was not shown to have support in Michigan law.

■ The Debtor cited *Loomis v. Roberts*, 57 Mich. 284, 23 N.W. 816 (1885) and *First National Bank of Durand v. Phillpotts*, 155 Mich. 331, 119 N.W. 1 (1909) for the contrary proposition. Although *Loomis* says that a constructive trust arises only by operation of law, it is silent as to when a constructive trust is deemed effective. In *Phillpotts*, the Michigan Supreme Court held that a judgment creditor, without notice of another's equitable title, who levies an execution on its debtor's real estate has the rights of a bona fide purchaser, protecting it against the prior equitable title of the other. Why that case is inapposite is because it deals with real estate, which is not involved here. Just as importantly, the Michigan statute, Mich.Comp. Laws § 600.6051, which is consistent with Michigan's land title recording statute, Mich. Comp.Laws § 565.29, dictates the result. With respect to the money or personalty involved here, no such statute exists. In fact, the analogy cuts against the Debtor. Under the Uniform Commercial Code, a good faith purchaser for value is accorded treatment similar to the bona fide purchaser of real estate. See Mich.Comp.Laws § 440.2403. But, as a general rule, a lien creditor is not classified as a good faith purchaser under § 2–403 of the Uniform Commercial Code. See *Matter of Federal's, Inc.*, 553 F.2d 509, 515 (6th Cir.1977); *Bassett Furniture Ind., Inc. v. Wear (In re P.F.A. Farmers Market Ass'n)*, 583 F.2d 992, 997–98 (8th Cir.1978). As a result, the trustee in bankruptcy does not acquire good faith purchaser status. See *Ray–O–Vac v. Daylin (In re Daylin)*, 596 F.2d 853, 856 (9th Cir.1979); *Schueler v. Weintrob*, 360 Mich. 621, 632, 105 N.W.2d 42 (1960).

There is no Michigan case which pits party A, who would be entitled to the imposition of a constructive trust for the purpose of recovering cash or personal property from party B, who would be unjustly enriched by its retention, and party C, a judgment creditor of party B, who levies an execution on the property, while in party B's possession. There is therefore no answer in Michigan jurisprudence to this priority contest. It is helpful, then, to look to treatises such as restatements of law for direction.

According to § 160f of the Restatement:

The equitable interest of the beneficiary [of a constructive trust] in the property will be protected if the rights of bona fide purchasers do not intervene. The creditors of the constructive trustee are not bona fide purchasers, and take subject to the rights of the beneficiary. . . .

The Restatement continues:

a. The principle that a person who innocently has acquired the title to property for which he has paid value is under no duty to restore it to one who would be entitled to reclaim it if he had not been innocent or had not paid value therefor, is of wide application, being a limitation upon the principle that a person who has been wrongfully deprived of his property is entitled to restitution. The question in such cases is which of two innocent persons

should suffer a loss which must be borne by one of them. The principle which is applied by courts of equity is that they will not throw the loss upon a person who has innocently acquired title to property for value. The bona fide purchaser is not only entitled to retain the property free of trust, but he is under no personal liability for its value.

This principle is most frequently applied to the situation where a person holds property subject to a constructive trust and transfers it to a person who pays value without notice of the facts which gave rise to the constructive trust; in which case the constructive trust is cut off. This situation arises, for example, where a person obtains property by fraud and transfers the property to a person who pays value without notice of the fraud....

Restatement, § 172(2), Comment a.

■ According to § 173(2), a transfer of personalty "in satisfaction of or as security for a pre-existing debt or other obligation is a transfer for value." (In all other cases, the Restatement of Trusts, §§ 298–309 defines the term "value" for these purposes.) On the other hand, the Restatement further explains, the creditors of the constructive trustee are not purchasers for value. So if the constructive trustee "becomes bankrupt, the trustee in bankruptcy is not a bona fide purchaser of the property. So also a creditor who attaches the property or obtains and records a judgment or levies execution upon property is not a bona bide purchaser, although he had no notice of the constructive trust. This is true whether the property is land,[14] or a chattel, or a chose in action, whether the chose in action is in the form of a negotiable instrument or not." Restatement, § 173(j). Interestingly, if the judgment creditor purchases the property at the execution sale, it becomes a bona fide purchaser and is protected against the claim of the constructive beneficiary. Restatement § 173(k).

According to the Restatement, then, the rights of a constructive trust beneficiary of personalty are defeated by a transferee from the constructive trustee who takes for value and without notice of the interest of the beneficiary. And "value" is expansively defined to include a purchase for present value of money, other property or services, a loan of money or other property in return for security; and even forgiveness of an antecedent indebtedness. That means that a constructive trustee can voluntarily transfer the property to one of his creditors in discharge of the debt and this creditor will prevail over the rights of the constructive trust beneficiary in the property. But if that same creditor acts affirmatively to collect the debt and have the sheriff seize the trustee's property to sell it at an execution, the creditor will not prevail. Though one may question the logic of allowing a transferee who takes property via a voluntary transfer from the constructive trustee to prevail, but not a transferee who takes via an involuntary seizure, it nonetheless appears to be the accepted result.

The Restatement's conclusion that a judicial lien creditor does not prevail over a constructive beneficiary is reflected in the derivative title rule of Michigan law. That rule provides that a judgment lien creditor has no greater rights than would the judgment debtor. Mich.Comp.Laws §§ 600.6034 and 600.6017(3); *Brogdon v. American Automobile Ins. Co.*, 290 Mich. 130, 134, 287 N.W. 406 (1939); *Kidd v. Minnesota Atlantic Transit Co.*, 261 Mich. 31, 34, 245 N.W. 561 (1932); *Kalamazoo Trust Co. v. Merrill,* 159 Mich. 649, 656, 124 N.W. 597 (1910); *Nall v. Granger,* 8 Mich. 449, 453–54 (1860); *Powell v. Whirlpool Employees Fed. Credit Union,* 42 Mich.App. 228, 231, 201 N.W.2d 683 (1972).

In applying the *Omegas* concurring opinion's analysis, then, under Michigan law, a judgment lien creditor would be defeated by a party entitled to assert a constructive trust upon the property that was in the possession of the judgment debtor, since the lien creditor takes no greater rights in the property

---

**14.** This statement is not true. As we saw earlier, under Mich.Comp.Laws § 600.6051 and *Phillpotts,* a creditor who levies execution upon the property prevails against a constructive beneficiary. Also, pursuant to § 544(a)(3) of the Code, the trustee in bankruptcy is vested with the rights of a bona fide purchaser of land.

than the judgment debtor. As a result, the judgment debtor's trustee in bankruptcy would likewise be defeated when donning the "hat" of this lien creditor. Another way of saying this, of course, is that Michigan law would allow a constructive trust to relate back given the particular circumstances here. Accordingly, I conclude that Wilfarm would prevail if Judge Guy's reasoning supplies the rationale for the *Omegas* majority opinion.

The majority opinion's repeated reference to § 544(a) initially suggests that it too, is based on § 544(a)'s trumping of § 541(d). For example, during the course of its opinion, the court argued that "allowing the estate to 'benefit from property that the debtor did not own' is exactly what the strong-arm powers are about: they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title." *Id.* at 1452 (quoting *Belisle v. Plunkett,* 877 F.2d 512, 516 (7th Cir.1989)). The court also criticized another circuit's ruling that § 544 does not empower "a bankruptcy trustee to retain for the benefit of the estate property that the debtor obtained by fraud...." *Id.* at 1449 (citation omitted). It further opined that "the Code[ ] place[s] the trustee in the position of a first-in-line judgment creditor and bona fide purchaser for value, empowered to avoid certain competing interests ... so as to maximize the value of the estate." *Id.* at 1452. *See also id.* at 1453 ("The Code endows the trustee with generous powers to bring property of imperfect title or disputed ownership into the debtor's estate....").

■ Unfortunately for Wilfarm, I cannot, with intellectual honesty, conclude that the majority used Judge Guy's analysis. To begin with, Judge Guy prefaced his opinion with this comment: "Although I concur in the result reached by the court, *I would travel a different route to reach that result.*" *Omegas,* 16 F.3d at 1453 (emphasis added). More importantly, the trustee's strong-arm powers are determined by reference to state law. 4 *Collier on Bankruptcy,* ¶ 544.02 at 544–6 (15th ed. 1996). While the majority opinion made broad statements concerning the purpose and underlying policy of § 544(a), the court failed to mention a single

Kentucky case in connection with these comments. The absence of any reference to state law in this regard clearly shows that application of § 544(a) does not provide the reasoning for the *Omegas* decision. *Omegas,* 16 F.3d at 1450 n. 7.

### The Policy Based Approach

What then is *Omegas'* rationale? While several courts have cited, applied, quoted from, followed or even criticized *Omegas, see, e.g., In re Mark Benskin & Co.,* 59 F.3d 170 (6th Cir.1995) (unpublished but available on Westlaw at 1995 WL 381741); *Butcher v. Blachy (In re Butcher),* 1995 WL 578193 (E.D.Mich. July 31, 1995), only one has extensively analyzed it. In *Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos),* 183 B.R. 149 (Bankr.N.D.Ill.1995), Judge Barliant criticized *Omegas'* lack of consistent analysis, noting that the opinion's "general conclusion that, absent a specific state statute to the contrary, constructive trusts are not properly invoked to gain super-priority over the trustee in bankruptcy" followed neither state law nor bankruptcy law. 183 B.R. at 157 n. 7. He used the classic approach and decided that *under Illinois law,* a party in a position like those of Datacomp's and Wilfarm's, lacking a judicial declaration of constructive trust, have no equitable interest in property of the estate. *Id.* at 157–160.

How did the majority reach this result if, as Judge Barliant stated, and as I agree, it was not based on state law or the plain meaning of § 541 of the Bankruptcy Code? I conclude that the rationale is solely bankruptcy policy. *Cf. Federal Land Bank of Louisville v. Glenn (In re Glenn),* 760 F.2d 1428, 1436 (6th Cir.1985) (holding that the debtor's right to deaccelerate a mortgage through chapter 13 is cut off at the foreclosure sale, and by doing so explicitly eschewing "any effort to analyze the transaction in terms of state property law."). And, although the *Omegas* court's justification for legislating its view of policy is barely stated, it exists and is cited nonetheless.

*Butner* is better known for the general rule that property rights are fixed by state law. But its lesser known exception limits that general rule as follows: "*Unless some*

*federal interest requires a different result,* there is no reason why [state defined property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S. at 55, 99 S.Ct. at 918 (emphasis added); *see also Foos,* 183 B.R. at 157 ("A particular state law will continue to apply ... until there is 'actual conflict with the system provided by the Bankruptcy [Code]....'") (quoting from *Universal Cooperatives, Inc. v. FCX, Inc. (In re FCX, Inc.),* 853 F.2d 1149, 1153 (4th Cir.1988), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989))).

I conclude that *Omegas* found there to be a conflict between the federal bankruptcy policy of ratable distribution and state property law on constructive trusts. The following statements clearly point to this conclusion. "[J]ust because something is so under state law does not necessarily make it so under the Bankruptcy Code." *Omegas* 16 F.3d at 1450. "Ultimately, 'state law must be applied in a manner consistent with federal bankruptcy law.'" *Omegas* 16 F.3d at 1450–51 (quoting *North American Coin & Currency,* 767 F.2d at 1575). "The equities of bankruptcy are not the equities of the common law. Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor." *Omegas* 16 F.3d at 1452. "To permit a creditor, no matter how badly he was 'had' by the debtor, to lop off a piece of the estate under a constructive trust theory is to permit that creditor to circumvent complete-

ly the Code's equitable system of distribution." *Omegas* 16 F.3d at 1453.[15]

I am not unmindful of the hardship this decision may have on Wilfarm. It is for this very reason that a quest for the true holding of *Omegas* was undertaken so earnestly. The quest was made all the more difficult by the fact that Congress and the case law prior to *Omegas* recognized constructive trusts as being appropriate within bankruptcy. However, after much consideration, there is no longer a doubt in my mind that *Omegas,* in reliance on the federal policy exception of *Butner,* held that the bankruptcy policy of ratable distribution trumps state law on constructive trusts. Therefore, under the rule of the *Omegas Group* decision, Wilfarm's motion must be denied. An order consistent with this opinion will be entered.

### *ORDER DENYING WILFARM'S MOTION FOR RELIEF FROM THE STAY*

For the reasons stated in the Opinion of even date,

**IT IS HEREBY ORDERED** that Wilfarm's Motion for Relief from the Stay is **DENIED.**

15. The principle of "ratable distribution" is relevant only with respect to property interests which are subject to distribution—i.e., those interests which the estate owns, whether by virtue of § 544(a) or otherwise. *Cf. Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code.... Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, [that] policy ... is not implicated."). Yet *Omegas* used this *objective* of asset distribution as justification for determining *what* assets the trustee can distribute. Despite this, and the other shortcomings of *Omegas,* its mandate is controlling upon this Court and its effect is nonetheless quite salutary.

As a result of the *Glenn* court's "pragmatic" decision, *Federal Land Bank of Louisville v. Glenn (In re Glenn),* 760 F.2d 1428, 1435 (6th Cir.1985) trial courts no longer have cause to wrestle with some of the more difficult questions of property law. *Id.* A similar result can be expected from *Omegas.* Cases in which the remedy of constructive trust are sought can run the gamut: some supplicants like Datacomp, have a dubious call upon equity; while others like Wilfarm, present far more sympathetic situations. In the middle lie the vast majority of cases, where fine distinctions necessitate extremely subjective determinations. Trial courts are, as a result of *Omegas,* mercifully spared from this onerous task.